## L. E. WILLIAMS v. STATE.

No. A-5253.    Opinion Filed Dec. 4, 1926.
(251 Pac. 100.)

Mathers & Renegar, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

BESSEY, P. J.   This prosecution was by indictment, which, in substance, charges that L. E. Williams, on the 16th day of June, 1923, did unlawfully, willfully, and feloniously, by means of fraud, and without the consent or knowledge of F. C. Bradberry, take, steal, and carry away from the person of Bradberry, a written instrument of the value of $50.   This instrument is set out at length in the indictment, showing it to be a check for $50, payable to the order of Williams and signed by Bradberry, and that the taking and carrying away of the check by Williams was with a fraudulent and felonious intent, and appropriated its value to his own use; in short, the indictment charges a larceny by fraud.

The evidence on the part of the state shows that Bradberry, for some months, had been a porter at the Broadway Central Hotel in Oklahoma City; that he was charged in the county court of Oklahoma county with the offense of selling a half pint of liquor.

Williams, who, up to that time, was a stranger to Bradberry, went to Bradberry's house and told him that he understood that he was charged with the illegal disposition of intoxicating liquor. Williams assured Bradberry that he could cause the case to be dismissed for $200. At this conference, Bradberry gave Williams the check in question, for $50, which Williams was to use in bringing about the dismissal of the prosecution. In carrying out this arrangement, the proof shows that other payments were made by Bradberry to Williams, aggregating $150. On the day the case was set for trial, Bradberry employed another attorney. His trial resulted in a verdict of "not guilty."

Williams claims that this check and the other sums of money were paid to him for the purpose, and with the understanding that he (Williams) was to hire attorneys to defend Bradberry. It was shown that Williams had a number of conversations with a firm of lawyers— Wright and McGill, in which an indefinite arrangement was made with this firm to represent Bradberry. One of the members of this firm testified that he had had a number of conferences with Williams concerning the case; that a fee had been agreed upon, and that his firm expected to represent Bradberry; that he had urged Williams to bring Bradberry to his office for a conference, and to arrange for witnesses, and that no such conference ever took place; that, on the date set for trial, he went to the courthouse expecting to represent Bradberry, but found that Bradberry had employed another attorney. This attorney, also attorney of record in this case, claimed that he considered their firm had rendered some service for which they were entitled to compensation from Williams, who had previously informed him that Bradberry had paid him money to employ attorneys. This same firm of attorneys are the attorneys of record in this case.

From all that appears in the record, it seems to be a fair deduction that Williams may have refused to refund the money to Bradberry upon the advice of his attorneys in this case, and who claim to have represented Bradberry in the other case.

It would prolong this opinion unnecessarily to attempt to relate all the peculiar incidents disclosed in the record. The record is also remarkable for what it does not disclose.

Upon consideration of the whole record upon rehearing, it is the opinion of the court that the interlocking relationship of all the parties concerned and the attorneys makes it seem probable that a felonious intent upon the part of Williams to obtain this money under circumstances amounting to larceny by fraud is not sufficiently established. Bradberry seems to have been an ignorant negro porter, who had no proper conception of court procedure or the propriety of employing an unofficial emissary to bring about the dismissal of the prosecution. On the other hand, the conduct of Williams and his attorneys was not above reproach; but, the inference is fair that Williams expected to use this money to employ attorneys, possibly expecting some personal advantage to himself.

The case is reversed, and remanded for a new trial.

DOYLE and EDWARDS, JJ., concur.